**MERCANTILE BANK OF THE AMERICAS, Inc., v. FLOWER LIGHTERAGE CO., Inc., et al.**

(Circuit Court of Appeals, Second Circuit. February 8, 1926.)

No. 106.

1. **Shipping ⬤132(6)—Libel for damages to shipment of cocoa beans was properly dismissed, in absence of proof that lighter handling same was unseaworthy or negligently handled.**

Libel for damages to shipment of cocoa beans, for negligence in handling lighter and its unseaworthiness, was properly dismissed, in absence of proof that such lighter was unseaworthy or negligently handled.

2. **Wharves ⬤20(7)—Lighter company, as bailee of shipment of cocoa beans, might sue in admiralty or at law for damages inflicted by negligence of dock company.**

Lighter company, as bailee of shipment of cocoa beans, might sue in admiralty or at law for all damages inflicted on such shipment by dock company's negligence; its possessory title being sufficient.

3. **Release ⬤27—Release of dock company in libel by carrier for shortage in shipment of cocoa beans, when carrier's lighter was damaged by dock company's foul berth, held conclusive as to owner's similar claim for damages to shipment.**

Release under seal of dock company, in libel by carrier for shortage in shipment of cocoa beans when carrier's lighter was damaged by dock company's foul berth, *held* conclusive as to owner's similar claim for damages to shipment, where it knew of carrier's suit, approved it, and received and appropriated benefit thereof; claim in both cases being for damages, and release not being attacked for fraud.

4. **Principal and agent ⬤170(3)—Laches may rest on failure promptly to deny agent's authority arising even by implication.**

Laches is not a matter of lapse of time only, but of inequity of admitting the claim, and it may rest on failure promptly to deny an agent's authority arising even by implication.

5. **Wharves ⬤20(7)—Libel of dock company by owner for damages to shipment of cocoa beans held barred by laches, where dock company believed that claim was closed by release after suit 18 months earlier.**

Libel of dock company by owner for damages to shipment of cocoa beans when carrier's lighter was damaged by dock company's foul berth *held* barred by laches, where dock company had good reason to believe that claim was closed

by a release after carrier's suit 18 months earlier.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the Mercantile Bank of the Americas, Inc., against the Flower Lighterage Company, which filed a petition against the New York Dock Company. Libel dismissed as to the Flower Lighterage Company. From a decree for libelant, the Dock Company appeals. Reversed and remanded, with directions.

In July, 1918, the bank owned a large consignment of cocoa beans. It employed Flower's lighter Huron to transport them to Dock Company's wharf. The Huron, in legal effect by invitation of Dock Company, occupied a berth at a bulkhead owned and operated by Dock Company. It may now be assumed that this berth was foul, and the wharfinger should have known it. Result was that the Huron caught on a hidden pile, stove a bottom plank or so, leaked to the injury of cocoa beans, and when the cargo was finally unladen 26 bags were said to have disappeared.

In September, 1918, Flower Company drew a libel against Dock Company "as owner of barge Huron, and bailee of the cargo on board thereof," setting forth the story aforesaid and claiming recovery for the usual injuries to vessel, "besides the damage to cargo and salvage charges in connection therewith." Then began negotiations for settlement, and proctors for Flower Company presented as their "cargo loss" $619.11, which in fact represented the disappearance of 26 bags, and no more. A year later (November, 1919) the bank having complained to Flower Company of delay, that company advised that the libel aforesaid included, "not only our own damage, but the damage sustained by your cargo."

In January, 1920, the president of Flower Company made by affidavit an elaborate statement of damages in the then pending suit. In it he explained that the "charge of $619.11 for cargo damage represents the damage sustained by the cargo, for which amount a claim has been presented by Mercantile Bank of Americas, and the assistant manager of said bank has made an affidavit to said loss, and said affidavit is attached hereto." The affidavit by the bank official was cotemporaneously executed, and stated that the bank had "presented a claim for loss of and damage to cargo in the above-entitled proceeding"; also that "the cocoa described in said claim was lost and damaged as therein set forth."

Thereupon, and in January, 1920, the Dock Company paid the amount demanded by Flower Company, including said $619.11, and Flower Company executed a release in usual form of every kind of injury, loss, and damage "arising or growing out of the injury received by the barge Huron and its cargo, when sunk at a wharf of the New York Dock Company on or about July 17, 1918, and which damages are more particularly referred to in a libel heretofore filed, etc."; i. e., libel of Flower Company above referred to.

The amount of the settlement was paid to Flower Company; $619.11, with interest, was sent to the bank, and by it retained, without comment or objection, until February 10, 1921, when the present libel was filed against Flower Company only. It alleges that by reason of the leaking of the Huron the cocoa beans had been injured to the extent of upwards of $16,000, and this loss is declared by the libelant to have been due to "the negligence of respondent and those in charge of and operating the said lighter Huron, and by and through the unseaworthiness of the said lighter Huron."

Flower Company answered, setting up substantially the facts above outlined, but filed a petition against Dock Company, alleging the same foul berth that had been the subject of the libel of 1918. This petition was filed November 30, 1921, and thus more than a year and a half after the execution of the release aforesaid the Dock Company was made aware that the bank was in effect still suing.

At trial no evidence whatever was given in support of the allegations of negligence or unseaworthiness in respect to the Huron, but the foul berth was proved, as also the injury to the surviving cocoa beans. For this decree was given the bank against Dock Company. The libel was dismissed as to Flower Company. This appeal was then taken.

Davies, Auerbach & Cornell, of New York City (Charles E. Hotchkiss and Martin A. Schenck, both of New York City, of counsel), for appellant.

Foley & Martin, of New York City (Patrick J. Dobson and William J. Martin, both of New York City, of counsel), for appellee Flower Lighterage Co.

Bigham, Englar & Jones, of New York City (Richard F. Shaw and Leonard J. Mat-

teson, both of New York City, of counsel), for appellee Mercantile Bank.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] In so far as the decree below dismissed the libel against Flower Company, it was right, because there was no proof, nor even attempt to prove, that the Huron was either unseaworthy or negligently handled. On this record there never was any excuse for filing the libel. The correctness of the decree, in so far as it awarded damages against Dock Company, depends on the nature and effect of the suit brought by Flower Company as bailee against appellant, and the subsequent settlement and release.

[2] The suit by carrier as bailee was usual and proper within the most familiar rules of admiralty. Benedict (5th Ed.) p. 323, and cases cited. Flower Company, as bailee, had good right, not only in admiralty, but at law, to sue for all the damages inflicted on chattels in the bailee's possession; the possessory title suffices. Knight v. Davis, etc., Co., 71 F. 662, 18 C. C. A. 287; Moran v. Portland Steam Packet Co., 35 Me. 55.

[3] It makes no difference that the bank might have instituted separate suit for its own loss, or (as is frequently done in admiralty) entered the separate appearance of its own proctors in the carrier bailee's suit. The evidence shows conclusively that it knew of the suit, approved of it, and, most important of all, received and appropriated the benefit thereof.

Effort is now made to differentiate the claim for shortage, for which full recovery was had, from the claim for damage advanced in the present suit. We cannot perceive any difference from this record. What was sued for by the bailee was *damage;* what was recovered was called by the same name, and so is what is now sued for. Also we think it clear on the evidence that the reason for shortage, i. e., failure to deliver after wetting all receipted for on shipment, was the same reason as that for damage, i. e., the practical sinking of the Huron at and because of her foul berth.

Whatever lawful demand libelant was entitled to make against Dock Company was single and indivisible, and the course here pursued is in our opinion a plain infringement of the rule against splitting claims. Baird v. U. S., 96 U. S. 430, 24 L. Ed. 703. Further, the matter proceeded to an express release under seal, and there is neither pleading nor evidence attacking that document as a fraud by or upon any one.

Libelant seems to think that, because it did not for unknown reasons produce *all* its demand, when it sued for and obtained part of it, it can now multiply suits and costs in the way here exemplified. For this there is no authority whatever. It authorized one suit for damages, it took the benefit thereof, and by so doing ratified a release which truthfully recited an extinction of the claim for damages. It pocketed the consideration for the release, and now, without any suggestion of fraud, asserts worthlessness of the release. This cannot be done at law (Drobney v. Lukens, etc., Co., 204 F. 11, at page 14, 122 C. C. A. 325), and, even if the maxim that admiralty is equity were more accurate than it is, it cannot be done in equity without plea and proof of fraud.

[4, 5] Finally, the demand of this libel, if not otherwise objectionable, is open to the charge of laches. This is not a matter of lapse of time only, but of the inequity of admitting the claim (Smith Co. v. Pomeroy Co. [C. C. A.] 299 F. 544), and it may rest on failure promptly to deny an agent's authority arising even by implication (The Sif [C. C. A.] 290 F. 361).

The inequity here is of the kind so often called "lulling into security." The charge of foul berth is often hard to prove, and always hard to disprove. The evidence must often be obtained by underwater investigations conducted by men of seafaring habit, who are usually citizens of the world. Here the Dock Company was called on to defend against such a claim, which it had good reason to think had been closed by a release after suit, a year and a half earlier. Result is that the Dock Company's plea of release should have been sustained.

Decree reversed, with costs in both courts against libelant, and cause remanded, with directions to dismiss the libel.