## THE YANKTON.

(District Court, D. Massachusetts. June 15, 1925.)

No. 2946.

1. **Maritime liens ⬥43—Acceptance of note by lienor does not operate to extinguish lien.**

Generally, in admiralty, acceptance of a note by the lienor does not operate to extinguish the lien.

2. **Payment ⬥67(4)—Presumption that giving of negotiable note is discharge of prior indebtedness may be rebutted.**

Presumption that giving of a negotiable note is a discharge and extinguishment of prior indebtedness between the parties on which it is founded may be rebutted.

3. **Payment ⬥67(4)—Whether evidence sufficient to meet presumption of payment of prior indebtedness by acceptance of note is question of fact.**

Whether evidence is sufficient to meet presumption of payment of prior indebtedness by creditor's acceptance of a negotiable note is a question of fact to be determined from all the facts and circumstances.

4. **Maritime liens ⬥44—Lienor, in accepting security for note given for pre-existing indebtedness, held to have waived his maritime lien.**

Lienor, which accepted mortgage and insurance policies on ship, as security for note given for pre-existing indebtedness, without reservation of its maritime lien, *held* to have thereby waived it.

In Admiralty. Proceeding by the Merritt Chapman & Scott Corporation against the steamship Yankton, with intervention by Castner, Curran & Bullitt, Inc. Petition to intervene dismissed.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for libelant.

Chas. J. Miller, of Boston, Mass., for petitioners Mason and others.

A. M. Schwarz and R. R. Sullivan, both of Boston, Mass., for Valvoline Oil Co.

William C. Plunkett, of Boston, Mass., for petitioners Peter Peddel and others.

Edward M. Moore, of Boston, Mass., for petitioner Splane.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for petitioner Ross Towboat Co.

George Gruzen, of Chelsea, Mass., for petitioner Coastwise Lighterage Co.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for petitioner Merritt Chapman & Scott Corporation.

Robert R. Duncan, of Boston, Mass., for Christensen.

Alexander Wheeler, of Boston, Mass., for petitioner Castner, Curran & Bullitt.

Blodgett, Jones, Burnham & Bingham, of Boston, Mass., for petitioner W. W. Hodder Co.

H. Krinsky, of Boston, Mass., for petitioner F. S. Smith, Jr.

Chas. M. Ludden, of Boston, Mass., for owners of S. S. Yankton.

Adolph M. Schwarz and Richard R. Sullivan, both of Boston, Mass., for Dexter Bros. Co.

Edmund R. Dewing, of Boston, Mass., for petitioner Standard Sanitary Mfg. Co.

Arthur L. Woodman, of Boston, Mass., for Armour & Co.

BREWSTER, District Judge. The above proceedings came on for hearing on the intervening petition of Castner, Curran & Bullitt, Inc., who claims a maritime lien for coal furnished the steamship Yankton.

It is admitted that the intervener furnished coal as alleged, and that he would have a lien therefor unless it has been lost by the acceptance by the intervener of the promissory note of the owner of the vessel for the full amount due, which note was secured by mortgage on the vessel and by assignment of certain policies of insurance.

The material facts are not in dispute. On October 1, 1924, the owner of the Yankton was owing the intervener $6,092.34, which sum represented the balance due for coal furnished to the vessel during the year 1924. The intervener was threatening to proceed against the vessel unless the amount was paid. After conferences between the owner and the intervener's local manager, it was finally proposed that the owner of the Yank-

ton give a demand note secured by a second mortgage on the vessel, and that, as further security for the note, the owner indorse over certain policies of insurance. The proposal was accepted by the intervener without any express reservation of its maritime lien for supplies. Nothing was said about retaining or waiving the lien by either the owner or the intervener. Thereafter the vessel left port on several occasions without objection on the part of the intervener. As a matter of fact, the intervener furnished coal for these trips, for which the owner paid cash. The intervener made several demands for payment of the note, but no action was taken by the intervener to enforce its security, and the note has not been paid. It was produced at the hearing, but the local manager of the intervener testified that it expected and intended to hold both the mortgages and the policies for whatever they might be worth. The sole question here presented is whether the intervener's maritime lien has been extinguished by the acceptance of the secured note.

[1, 2] I understand it to be the general rule prevailing in admiralty that the acceptance of a note by the lienor does not operate to extinguish the lien. The Alabama and Two Scows (D. C.) 22 F. 449. But in Massachusetts and Maine the federal courts have followed the state courts and have recognized a long-established presumption that the giving of a negotiable note is a discharge and extinguishment of prior indebtedness between the parties on which it is founded. Stebbins v. North Adams Trust Co., 243 Mass. 69, 136 N. E. 880; Page v. Hubbard, Fed. Cas. No. 10663; Carter v. Byzantium, Fed. Cas. No. 2473. But this presumption may be rebutted. The Gurnet (D. C.) 235 F. 595. And the fact that the presumption would deprive the creditor taking the note of the substantial benefit of some security has been held sufficient to meet and repel it. Lovell v. Williams, 125 Mass. 439; Davis v. Parsons, 157 Mass. 584, 32 N. E. 1117; Stebbins v. North Adams Trust Co., supra; The Motorship Mariner (Memo. of Lowell, J., Oct. 8, 1924); The Gurnet, supra.

[3] Whether the evidence is sufficient to meet the presumption of payment is, I take it, a question of fact to be determined from a consideration of all the facts and circumstances of the case. That the intervener had threatened to arrest the vessel before the mortgage was accepted and had permitted her to leave port repeatedly; that it had received "a distinct and independent se-

curity"; that it refused to relinquish this security—are all circumstances which have been held to be of consequence and to have a strong tendency to indicate an intention to rely on the new and substituted security rather than upon the original lien. See The Brig Wexford (D. C.) 7 F. 674; The Thomas Morgan (D. C.) 123 F. 781; The D. B. Steelman (D. C.) 48 F. 580.

In the ·D. B. Steelman Case, the court says: "If the execution of the mortgage be in manner such as to make it conflict with the rights of maritime creditors whose claims are of equal dignity with that secured by the mortgage, then it would be inequitable to allow to the mortgagee the benefit of two remedies against the ship, and his taking the mortgage would· be held as waiving the maritime lien."

See, also, Stevens v. The Sandwich, Fed. Cas. No. 13409.

[4] After considering the evidence before me in the light of the decisions above referred to, I am forced to the conclusion that the intervener, in accepting the mortgage and the insurance policies as security for the note given for the pre-existing indebtedness, must be held to 'have thereby waived his maritime lien; or, to state it in another way, the facts disclosed by the evidence do not, in my opinion, repel the presumption of payment which in this jurisdiction at least operates against one who takes a note for existing indebtedness and does not expressly reserve his rights as lienor.

The petition to intervene may be dismissed.