**William E. BAUN, Libelant,**

v.

**The Oil Screw or Vessel Called THE ETHEL G, etc. and Harold C. Hudson, Owner, Libelees, Metlakatla Indian Community, Intervenor.**

**No. 7072-A.**

District Court, Alaska. First Division, Ketchikan.

Nov. 30, 1954.

William L. Paul, Jr., Juneau, Alaska, for libelant.

C. L. Cloudy, of Ziegler, Ziegler & Cloudy, Ketchikan, Alaska, for intervenor.

FOLTA, District Judge.

The questions presented are (1) whether an in personam judgment against the owner of the vessel for maintenance and cure is res judicata in a subsequent suit against the vessel based on the same claim, and (2) whether jurisdiction has been acquired over the res where libelant failed to have a notice of seizure published, and if not, whether the objection is available to the intervenor.

On December 8, 1952, the libelant obtained a decree for $804 against the owner of the vessel here involved for maintenance and cure, but was unsuccessful in his efforts to enfore collection. Baun v. Hudson, D.C., 108 F.Supp. 523. He thereupon instituted this suit against the vessel and placed in the hands of the United States Marshal a "warrant of arrest and motion" (sic) directing him to "give due notice to all persons that they appear on or before the 20th day *after the date hereof*". (Italics supplied.) The only date stated is June 17, 1954. The Marshal's return recites that he "served the same on the 8th day of July, 1954, by arresting and taking into custody the Ethel G" and "directed that the said warrant of arrest and 'motion' be published in the Ketchikan Daily News" for 20 days commencing July 10, 1954.

Since the warrant and monition as published was a literal copy and no notice of seizure was published, it is obvious that it would be impossible for any person concerned to determine whether the date in the phrase "after the date hereof" referred to the date of the proc-

ess or the date of the newspaper. Notwithstanding this defect, however, the intervenor filed its libel on July 29, 1954, setting forth claims based on a preferred maritime mortgage and a maritime lien for supplies furnished.

The libelant does not dispute the intervenor's claims but asserts that the lien and decree heretofore obtained is superior and contends that the objection to the application of the doctrine of res judicata is not available because (1) the intervenor, while he may assert his own claims, is precluded from asserting the claims of others, and (2) since the vessel speaks through its master and owner who defended against the previous suit, it may not be heard in this suit.

█ It thus appears that although the libelant originally could have resorted to an action in personam or in rem, or both, he elected to proceed against the owner alone. By doing so and obtaining a decree in personam, however, he did not waive his right to proceed against the vessel, The Brothers Apap, D.C., 34 F. 352; The Cerro Gordo, D.C., 54 F. 391; The Eastern Shore, D.C., 24 F.2d 443; Robinson on Admiralty 394, Sec. 54.

The question remaining is whether the judgment or evidence in the previous case is admissible in the present case. The only authority revealed by a diligent search is The Boston, C.C., 8 F. 628, which supports the proposition that it is not admissible. There a decree was obtained against the vessel owner under a statute subjecting such owner to individual liability for the penalties authorized and giving a lien against the vessel therefor, but, during the pendency of the action the vessel was sold. Contending that transferees were concluded by the judgment, the libelants proceeded against the vessel. In adversely disposing of this contention the Court said,

"Upon what principle are the defendants concluded by the former suit? It was not a proceeding in rem against the vessel, but a personal action against the then defendants for penalties personally incurred by them. To that suit it is certain the present defendants were not parties. Were they privies, so as to be bound by the result? I am of opinion that they were not. They were not personally liable for the penalties sued for. It is true, between the former owners of the Boston and these defendants (who are their vendees) there is priority of title. But the title to the vessel was not involved in the former suit; nor did that suit involve any question of lien. Neither did the judgment therein obtained become a lien on the Boston. At the date of that judgment the title to the vessel was in the present defendants; and this suit is not to enforce that judgment. It is an original suit in rem in admiralty to enforce the lien created by section 4469 of the Revised Statutes, which makes said penalties a lien upon the vessels. And now for the first time the present owners have an opportunity to be heard in answer to the claim. Very strange would it be, therefore, were they shut off from all defence by a proceeding to which they were not parties."

Further support for the proposition that persons claiming an interest in the vessel are not bound by an in personam judgment in an action to which they were not parties may be inferred from the apparent recognition by all the parties in The Brothers Apap, The Cerro Gordo, and The Eastern Shore supra, of the fact that in such situations the doctrine of res judicata was not applicable, and from what is said in 2 C.J.S., Admiralty, § 164b, pp. 286–287, as well as upon general principles governing the application of the doctrine, 30 Am.Jur. 951–956, Secs. 220, 224.

█ I conclude, therefore, that the intervenor is not foreclosed by the in personam decree obtained by the libelant in the previous case. A contrary conclusion would tend to promote fraud and collusion. For example, a judgment in

personam obtained in some distant port, in a poorly defended or collusive action, could be impressed upon the vessel, to the prejudice of third persons entitled to their day in court.

The conclusion reached makes it unnecessary to consider the jurisdictional question.

The libelant may have 20 days in which to publish a notice of seizure and prepare his proof.